Dylan Liddiard (*pro hac vice pending*)
Anthony Weibell (*pro hac vice pending*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
dliddiard@wsgr.com
aweibell@wsgr.com

Ava Miller (*pro hac vice pending*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
armiller@wsgr.com

J. Derek Kearl (10738)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
JDKearl@hollandhart.com

*Attorneys for Plaintiff Podium Corporation Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PODIUM CORPORATION INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CHEKKIT GEOLOCATION SERVICES INC., EUGENE TAGLE, MYLES HIEBERT, DANIEL FAYLE, LEE KLIMPKE, AND EMILY FRANZ-LIEN<br><br>        Defendants. | **PLAINTIFF PODIUM CORPORATION INC.'S AMENDED COMPLAINT FOR VIOLATION OF THE CFAA, BREACH OF CONTRACT, UNFAIR COMPETITION, COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE ECONOMIC RELATIONS, CIVIL CONSPIRACY, AND AIDING AND ABETTING VIOLATIONS OF THE CFAA**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No. 2:20-cv-00352-JNP-DAO<br><br>Judge Jill N. Parish<br>Magistrate Judge Daphne A. Oberg |

Plaintiff Podium Corporation Inc. ("Podium" or "Plaintiff"), by and through its undersigned counsel, hereby brings this Amended Complaint against defendants Chekkit Geolocation Services, Inc. ("Chekkit"), Eugene Tagle, Myles Hiebert, Daniel Fayle, Lee Klimpke, and Emily Franz-Lien (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, breach of contract, unfair competition, copyright infringement,  trademark infringement, intentional interference with Podium's existing and prospective economic relations, civil conspiracy, and aiding and abetting violation of the Computer Fraud and Abuse Act.

2.      In order to circumvent technological barriers that protect Podium's proprietary information and fraudulently gain access to Podium's products and services, Defendants used a false identity, created a fake user account, and forged a signature on a contract with Podium.  In addition, Defendant Chekkit has breached numerous provisions of Podium's Terms of Service and Acceptable Use Policy, engaged in unfair competition, and infringed Podium's intellectual property rights by targeting Podium's customers through its webchat widget, using the PODIUM name and logo to promote Chekkit's products and services, and making unauthorized copies of Podium's copyrighted software and other works.

3.      Despite Plaintiff having sent a cease and desist letter and requesting mediation to address Defendants' conduct, Defendants have continued to commit these fraudulent and infringing acts and have refused to engage in mediation.

4.      In light of these continued and extensive contractual breaches, willful copyright and trademark infringements, acts of unfair competition, violations of the Computer Fraud and Abuse

Act, intentional interferences with Plaintiff's existing and prospective economic relations, and civil conspiracy, Plaintiff seeks injunctive relief, monetary damages and/or Chekkit's profits in an amount to be proven at trial, an award trebling damages and/or Chekkit's wrongfully obtained profits, punitive damages, attorneys' fees, costs, and pre- and post-judgement interest.

## PARTIES

5.      Plaintiff Podium is a Delaware corporation with its principal place of business at 1650 W. Digital Drive, Lehi, Utah 84043.

6.      Founded in 2014 under the name RepDrive, Inc. and rebranded as Podium in 2015, Podium is a technology company that offers an interaction management platform that enables companies with a local presence to connect with their customers at critical touchpoints to help them strengthen their businesses.  Podium serves more than 45,000 local businesses in the United States, Canada, and Australia by facilitating customer interactions, such as driving customer-generated online reviews and providing customer messaging tools.  Plaintiff is the owner of the intellectual property at issue in this action.

7.      Upon information and belief, Defendant Chekkit is a Canadian corporation with its principal place of business at 1460 Chevrier Blvd, Winnipeg, Manitoba R3T 1Y6, Canada.

8.      Upon information and belief, Defendant Chekkit was founded in 2016 and began to offer its software platform in the United States in late 2017.

9.      Upon information and belief, Defendant Eugene Tagle is a citizen and resident of Manitoba, Canada and was a sales representative for Chekkit between October 2017 and November 2018 and November 2019 and June 2020.

10.     Upon information and belief, Defendant Myles Hiebert is a citizen and resident of Manitoba, Canada and is Chekkit's Chief Executive Officer.

11.     Upon information and belief, Defendant Daniel Fayle is a citizen and resident of Manitoba, Canada and is Chekkit's Chief Security Officer.

12.     Upon information and belief, Defendant Lee Klimpke is a citizen and resident of Manitoba, Canada and is Chekkit's Chief Technology Officer.

13.     Upon information and belief, Defendant Emily Franz-Lien is a citizen and resident of Manitoba, Canada and is Chekkit's Chief Operating Officer.

## JURISDICTION AND VENUE

14.     This action arises under the Computer Fraud and Abuse Act (18 U.S.C. § 1030, *et. Seq.*) (the "CFAA"), the Copyright Act of 1976 (17 U.S.C. § 101, *et. seq.*), and the Trademark Act of July 5, 1946, as amended (15 U.S.C. § 1051, *et. seq.*) (the "Lanham Act").  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) because they arise from the same facts and concern the same subject matter as the federal claims.  Alternatively, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  Diversity exists among the parties, and the amount in controversy exceeds $75,000.

15.     This Court has personal jurisdiction over Defendants because Defendants consented to the personal jurisdiction of this Court by agreeing to Podium's Terms of Service ("TOS"), which provide, "The exclusive jurisdiction and venue for actions related to the subject matter of this Agreement shall be the state courts located in Salt Lake County or Utah County, Utah or the United States District Court for the District of Utah, and both parties submit to the

personal jurisdiction of these courts." A true and correct copy of the TOS is attached as Exhibit A and is incorporated herein by reference.

16.    This Court also has personal jurisdiction over each of the Defendants because, as further detailed below, each of them has purposefully engaged in activity within the State of Utah and otherwise established minimum contacts within the State of Utah by virtue of their intentional interference with Podium's existing and prospective economic relations in Utah, violations of the CFAA, participation in a civil conspiracy, and/or aiding and abetting violations of the CFAA, which all caused direct and substantial harm to Podium in Utah. The Defendants' contacts with the State of Utah are both directly related to the claims in this Amended Complaint and were purposefully directed at Podium, that is, at a Utah resident. Moreover, each of the Defendants' contacts with the State of Utah was substantial, systematic, and continuous at all times relevant to the Amended Complaint.

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). Additionally, the Defendants consented to venue in this judicial district under the TOS. Ex. A.

## STATEMENT OF FACTS

### A.    The Podium Services and Intellectual Property

18.    Since 2014, Podium has been developing cloud-based software to help businesses modernize customer interactions. Podium provides an interaction management platform on a subscription basis to its clients, who can choose from a variety of add-on products such as Reviews, Webchat, Teamchat, Payments, Feedback, and Inbox. Podium offers its platform through its website <podium.com> and its mobile application, which is available in the Apple Store and

Google Play.  As used herein, "Podium Services" or "Podium's Services" includes the Podium platform, products, website, and mobile application.

19.    Podium began offering its platform and its product Reviews, which is an online review management tool, in 2014.  In 2017, it launched its customer messenger tool and its mobile application.  In 2018, it began offering its product Webchat, which is a customer messaging tool.  Podium further expanded its product offerings in 2019 to include Teamchat—an internal communication management tool—and Feedback, which gathers customer feedback through automated messages.  Lastly, in 2020, Podium launched Payments, which allows for the collection of payments through text messages.

20.    Podium owns the following federal trademark registrations and applications (together, the "PODIUM Marks"):

| Mark | Status | International Class | Filing Date | Registration Date | First Use Date |
|---|---|---|---|---|---|
| **PODIUM**<br>Serial No.: 88617888 | Pending | 35, 41, 42 | 9/16/2019 | | |
| **P**<br>Serial No.: 88617908 | Pending | 35, 41, 42 | 9/16/2019 | | |
| **INTERACTION MANAGEMENT**<br>Serial No.: 88248816 | Pending | 35, 41, 42 | 1/3/2019 | | 1/16/2019 |
| **CUSTOMER INTERACTION**<br>Serial No.: 88248831 | Pending | 42 | 1/3/2019 | | 1/16/2019 |
| **LEAD INTERACTION**<br>Serial No.: 88248823 | Pending | 42 | 1/3/2019 | | 1/16/2019 |

| Mark | Status | International Class | Filing Date | Registration Date | First Use Date |
|------|--------|---------------------|-------------|-------------------|----------------|
| **VENDOR INTERACTION**<br>Serial No.: 88248851 | Pending | 42 | 1/3/2019 | | |
| **INTERACTION PLATFORM**<br>Serial No.: 88248856 | Pending | 35, 41, 42 | 1/3/2019 | | 1/16/2019 |
| **EMPLOYEE INTERACTION**<br>Serial No.: 88248843 | Pending | 42 | 1/3/2019 | | |
| **TEAM INTERACTION**<br>Serial No.: 88248862 | Pending | 42 | 1/3/2019 | | 1/16/2019 |
| **IM**<br>Serial No.: 88248870 | Pending | 35, 41, 42 | 1/3/2019 | | |
| **PODIUM**<br>Reg. No.: 5196037<br>Serial No.: 86524270 | Registered | 42 | 2/4/2015 | 5/2/2017 | 6/2/2015 |
| **PODIUM**<br>Reg. No.: 5196036<br>Serial No.: 86524264 | Registered | 9 | 2/4/2015 | 5/2/2017 | 6/15/2015 |
| **REPDRIVE**<br>Reg. No.: 4751010<br>Serial No.: 86359801 | Registered | 35 | 8/7/2014 | 6/9/2015 | 10/2/2013 |
| **REPDRIVE**<br>Reg. No.: 4751012<br>Serial No.: 86359821 | Registered | 42 | 8/7/2014 | 6/9/2015 | 10/2/2013 |

| Mark | Status | International Class | Filing Date | Registration Date | First Use Date |
|---|---|---|---|---|---|
| **REPDRIVE**<br>Reg. No.: 4751011<br>Serial No.: 86359812 | Registered | 38 | 8/7/2014 | 6/9/2015 | 10/2/2013 |
| **REVIEWS SIMPLIFIED**<br>Reg. No.: 4861874<br>Serial No.: 86359846 | Registered | 35 | 8/7/2014 | 12/1/2015 | 5/8/2014 |
| **REVIEWS SIMPLIFIED**<br>Reg. No.: 4861875<br>Serial No.: 86359852 | Registered | 38 | 8/7/2014 | 12/1/2015 | 5/8/2014 |
| **REVIEWS SIMPLIFIED**<br>Reg. No.: 4861876<br>Serial No.: 86359856 | Registered | 42 | 8/7/2014 | 12/1/2015 | 5/8/2014 |

**B.    The Podium Terms of Service and Acceptable Use Policy**

21.    Anyone who uses or accesses the Podium Services must agree to all the terms and conditions of the Podium TOS and Acceptable Use Policy ("AUP").

22.    The TOS define the Podium Services as "the specific proprietary product of Podium provided to Client for Client's use during the Subscription Term, as part of Client's Subscription. The 'Service(s)' also includes the Website, as defined herein."  Ex. A.

23.    The TOS define the Website as "Podium.com (https://www.podium.com), including all of its related applications, dashboards or platforms."  Ex. A.

24.     The TOS only allow users to access the Podium Services for their internal business purposes during the term of their subscription and to permit their authorized users to access the Podium Services for their sole benefit.  Ex. A.  The TOS prohibit (1) incorporating the Podium Services into, or using them with or to provide, any site, product or service; (2) publicly disseminating information regarding the performance of the Podium Services; (3) breaking or circumventing any security measures or rate limits for the Podium Services; or (4) removing or obscuring any proprietary or other notices contained in the Podium Services.  Ex. A.

25.     Additionally, Podium's AUP prohibits using Podium Services to send messages using bots or other automatic-messaging systems and any unsolicited messages, promotions, advertising, or solicitations, including commercial advertising and informational announcements. A true and correct copy of the AUP is attached as Exhibit B and is incorporated herein by reference.

26.     The TOS require the parties to participate in mediation to settle any dispute that arises between them related to the TOS or the Podium Services before a party may file a judicial action.  Ex. A.  However, the TOS also state that if the parties are unable to resolve the dispute pursuant to the mandatory mediation provision, or if one of the parties refuses to participate in the mandatory mediation or fails to respond to a complaining party's request for mediation, the parties may subsequently file a judicial action.  Ex. A.  Additionally, the following claims are exempted from the mandatory mediation provision: "(1) An order of injunctive relief and any related incidental damages; and/or (2) An order to prevent the disclosure of or misuse of Confidential Information or Trade Secrets."  Ex. A.

**C.    Defendants' Conduct**

27.    When Defendant Chekkit launched in 2016 in Canada and began offering its products and services in the United States in 2017, it initially positioned itself as solely a reputation management solution for businesses rather than a customer relationship management solution.  In 2018, Chekkit launched its mobile application as well as its product Reviews, which is a review management and generation dashboard.

28.    In April 2018, Chekkit's then-Director of Sales, Eugene Tagle, scheduled a demo of the Podium platform under the guise of being an owner of a food services business, Munch Box, interested in reputation management as part of a plan among Tagle, Myles Hiebert, Daniel Fayle, Lee Klimpke, and Emily Franz-Lien to gain intel on Podium's Services.  *See* Exhibits J, K (CHEKKIT037386; CHEKKIT037472).  Unbeknownst to Podium, Tagle had no affiliation with Munch Box at that time, and Plaintiff performed the demo of the Podium Services for him and Fayle.  *See* Exhibit L, a true and correct copy of Chekkit's Responses to Podium's First Set of Interrogatories, which is incorporated herein by reference.

29.    In 2019, after receiving the demo from Podium, Chekkit began shifting its focus from solely reputation management to include customer relationships and interactions as well by launching its products Webchat and Messenger.

30.    Around this time, Chekkit began aggressively targeting Podium customers through false comparison advertising and keyword search advertising, using the PODIUM Marks without Plaintiff's consent or authorization.  True and correct copies of examples of these advertisements are attached as Exhibit C and are incorporated herein by reference.

31.     In October 2019, Tagle and other agents of Chekkit began targeting Podium's customers through Podium's webchat widget with the following message and others similar to it (Exhibits M, N, O (CHEKKIT037431; CHEKKIT037539; CHEKKIT037548)):

> I was going through your website and I seen you are using Podium. Would you be interested in saving more than half the cost a year for the exact same product? Click the link below and let me know if I can schedule a demo with you or if you have any questions.
>
> https://www.chekkit.io/compare/podium

32.     Defendants have continued to send these automated marketing messages to Podium's customers in violation of Podium's TOS and AUP. *See* Exhibit P (CHEKKIT037497).

33.     On December 5, 2019, a person holding himself out as Eric Winters contacted Podium, claiming to be the owner of Munch Box and requesting a demo of the Podium Services. However, Winters was using Tagle's personal phone number and personal email address. During the demo, "Winters" asked many detailed questions about Podium's newest product Teamchat even though he had indicated he would likely not have a need for it due to his small staff. He also spent considerable time asking the Podium representative about pricing for all of the Podium products, Podium's process for establishing pricing, and the various contract structures that Podium offers. Although he had told the representative that he would not be able to pay anywhere near the price he was quoted for the Podium platform, he purchased Podium, including Teamchat, for the quoted price using Hiebert's personal credit card. *See* Exhibit L, a true and correct copy of Chekkit's Responses to Podium's First Set of Interrogatories, which is incorporated herein by reference.

34.     On December 6, 2019, Winters—again using the personal phone number and email address of Tagle—purchased the Podium platform, Reviews, Messenger, Webchat, and Teamchat by signing a contract that bound him to Podium's TOS and AUP.  A true and correct copy of the contract is attached as Exhibit D and is incorporated herein by reference.[1]  Winters then registered his account and created a login using Tagle's personal email address.  As part of the online registration process, the owner of the email account once again accepted Podium's TOS and AUP.

35.     Upon information and belief, Tagle, Hiebert, Fayle, Klimpke, and Franz-Lien planned together to create Eric Winters as a fake identity and through Tagle, forged a signature on a contract with Podium to circumvent the technological barriers that protect Podium's proprietary information and fraudulently gain access to Podium's Services.  *See* Exhibits O, Q, R, S (CHEKKIT037548; CHEKKIT000025; CHEKKIT037371; CHEKKIT037491).

36.     Since purchasing the Podium Services, Chekkit has made unauthorized copies of Podium's copyrighted software and has been copying not only the functionality, but also the naming conventions, layout, appearance, color scheme, and feel of the Podium Services.  True and correct copies of illustrative side-by-side comparisons of the parties' websites and products are attached as Exhibit E and are incorporated herein by reference.

37.     Lastly, shortly after Plaintiff launched its product Payments in 2020, Chekkit announced that its new product Payments would be arriving in the Summer of 2020.

38.     On December 24, 2019, Plaintiff sent Chekkit a letter demanding that it immediately cease and desist from (1) accessing the Podium Services by any means or through

---

[1] Exhibit D has been redacted to remove confidential information that is not relevant to this proceeding pursuant to DUCivR 5-3(a)(2)(c).

any user account, (2) using any information it had obtained from accessing Podium's Services, (3) creating any user account to access the Podium Services, (4) publishing or repeating false and/or defamatory statements about Podium or the Podium Services, (5) using the PODIUM name to promote non-Podium products or services, (6) using Podium's webchat widget to target Podium's customers, (7) making unauthorized copies of Podium's copyrighted software and other works; and (8) using any trademarks owned by Podium without authorization. A true and correct copy of the cease and desist letter, dated December 24, 2019, is attached as Exhibit F and is incorporated herein by reference.

39.    On January 14, 2020, Chekkit responded to Plaintiff, claiming it had complied with Plaintiff's demands and noting that it "now consider[ed] this matter closed." However, in reality, Defendants had not complied with Plaintiff's demands and instead continued to engage in the fraudulent and infringing activity identified in Plaintiff's letter. A true and correct copy of the response letter, dated January 14, 2020, is attached as Exhibit G and is incorporated herein by reference.

40.    On January 21, 2020, Plaintiff sent Chekkit another letter, notifying Chekkit that it was invoking the Dispute Resolution Clause in the TOS and requesting that the parties engage in mediation no later than February 22, 2020. A true and correct copy of the letter, dated January 21, 2020, is attached as Exhibit H and is incorporated herein by reference.

41.    On February 22, 2020, after having not received a response from Chekkit for over a month, Plaintiff's counsel sent Chekkit an email, notifying it that Plaintiff was assuming that Chekkit was refusing to comply with the Dispute Resolution Clause and that Plaintiff intended to

initiate legal proceedings.  A true and correct copy of the email, dated February 20, 2020, is attached as Exhibit I and is incorporated herein by reference.

42.    Because Plaintiff has never received a response from Chekkit, Plaintiff was forced to file this action to protect its rights.

## FIRST CAUSE OF ACTION
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) – As to Chekkit

43.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 42.

44.    Plaintiff's website is supported by servers.  The website and its servers are used in interstate commerce, satisfying the definition of a "protected computer" under 18 U.S.C. § 1030(e).

45.    Defendant Chekkit violated the CFAA, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing Plaintiff's website, through which it obtained access to Podium's Services, without authorization or in excess of the authorization granted by the TOS and AUP.

46.    Chekkit violated the CFAA, 18 U.S.C. § 1030(a)(5)(B), by intentionally accessing the Podium Services without authorization or in excess of the authorization granted by the TOS and AUP, and as a result of such conduct, recklessly causing damage to Plaintiff.

47.    Chekkit violated the CFAA, 18 U.S.C. § 1030(a)(5)(C), by intentionally accessing Podium's Services without authorization or in excess of the authorization granted by the TOS and AUP, and as a result of such conduct, causing damage and loss to Plaintiff.

48.    18 U.S.C. § 1030(g) of the CFAA provides that any "person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  Pursuant to 18

U.S.C. §§ 1030(g), (a)(2)(C), and (c)(4)(A)(i)(I) of the CFAA, a civil action may be brought if the conduct involves a loss during any one-year period aggregating at least $5,000 in value.

49.    As a proximate result of the violations of the CFAA by Chekkit, Plaintiff has suffered damage and loss in excess of $5,000 within a one-year period, consisting of expenses (not including attorneys' fees) to investigate and remediate Defendants' fraudulent access of Podium's Services and lost revenue due to Defendants' unauthorized use of Plaintiff's copyrighted software and proprietary information.

50.    Plaintiff has suffered and continues to suffer damage and loss by reason of Chekkit's wrongful conduct.

51.    Plaintiff has been and continues to be irreparably harmed by the ongoing use and dissemination of Plaintiff's copyrighted software and proprietary information.

52.    As a proximate result of these violations, Plaintiff has suffered damage and loss in an amount to be proven at trial, and, absent injunctive relief, faces likely irreparable harm.

53.    Under 18 U.S.C. § 1030(g) of the CFAA, Plaintiff is entitled to an award of compensatory damages and injunctive and equitable relief.

54.    Chekkit is not entitled to benefit from its own wrongdoing by further disclosing, disseminating, posting, displaying, sharing, distributing, hosting, copying, viewing, accessing, providing access to, or making available to anyone Plaintiff's copyrighted software and proprietary information.

55.    This Court should therefore enjoin any further use, disclosure, dissemination, sale, posting, display, sharing, distribution, hosting, copying, viewing, downloading, accessing, provision of access to, or making available to anyone, in any manner whatsoever, Plaintiff's

property or information obtained from Podium's Services, including Podium's copyrighted software and proprietary information.

56.    This Court should order the disabling of all websites publicly displaying Plaintiff's copyrighted software and proprietary information.

57.    This Court should also order the deletion of all Internet posts that contain or reference Plaintiff's copyrighted software or proprietary information.

**SECOND CAUSE OF ACTION**
**Breach of Contract – As to Chekkit**

58.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 57.

59.    By accessing and using the Podium Services with full knowledge of the TOS and AUP, Defendant Chekkit agreed to be bound by the TOS and AUP.

60.    Plaintiff performed all of its obligations under the TOS and AUP.

61.    Defendant Chekkit has breached the TOS and AUP by participating in conduct explicitly prohibited by the two agreements, such as circumventing technological barriers that protect Podium's proprietary information, using the PODIUM Marks to promote its products and services, publishing defamatory statements about the performance of Podium Services, and targeting Podium customers through Podium's webchat widget.

62.    As a direct and proximate result of Defendant Chekkit's breaches, Plaintiff has suffered and will continue to suffer damages and irreparable harm and is entitled to damages to be proven at trial, pre- and post-judgment interest, court costs, attorneys' fees, and injunctive relief.

**THIRD CAUSE OF ACTION**
**Trademark Infringement and Unfair Competition under Section 43(a) of the Lanham Act**
**(15 U.S.C. § 1125(a)) – As to Chekkit**

63.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 62.

64.    Defendant Chekkit's unauthorized use of the PODIUM Marks wrongly and falsely designates, describes, or represents Chekkit's products and services, and causes, and is likely to cause, confusion, mistake, and deception of others as to the affiliation, connection, or association of Chekkit's products and services with Plaintiff, or as to the origin, sponsorship, or approval of these products and services by Plaintiff.

65.    Chekkit's use of the PODIUM Marks has caused and will continue to cause damage to Plaintiff in an amount to be proven at trial, and constitutes unfair competition and infringement of the PODIUM Marks in violation of 15 U.S.C. § 1125(a).

66.    Chekkit's conduct with respect to the PODIUM Marks has caused and, unless enjoined by this Court, will continue to irreparably harm Plaintiff's market reputation and goodwill, while unjustly enriching Chekkit, for which there is no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**Unfair Competition under the Utah Unfair Competition Act**
**(Utah Code Ann. §§ 13-5A-102, 103) – As to Chekkit**

67.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 66.

68.    Defendant Chekkit has engaged in intentional business acts and practices that are unlawful, unfair, and fraudulent and constitute unfair competition.

69.     Specifically, Chekkit has and continues to engage in malicious cyber activity by creating a fake user account under a fake identity in order to circumvent technological barriers that protect Podium's proprietary information and to fraudulently induce Podium to grant Chekkit access to Podium's services.  Additionally, Chekkit has and continues to infringe the intellectual property rights of Plaintiff by making unauthorized copies of Podium's software and engaging in willful trademark infringement of the PODIUM Marks.

70.     As a result of Chekkit's acts, the value of Podium's copyrights and the PODIUM Marks have been materially diminished.

71.     As a result of Chekkit's acts, Podium is entitled to its actual damages in an amount to be proven at trial, its costs and attorneys' fees, and punitive damages pursuant to Utah Code Ann. § 13-5a-103.

**FIFTH CAUSE OF ACTION**
**Direct Copyright Infringement – As to Chekkit**

72.     Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 71.

73.     Plaintiff holds a valid and enforceable copyright in and to the Podium software.

74.     Defendant Chekkit has infringed Plaintiff's copyright by reproducing copies of this software in violation of 17 U.S.C. § 106.

75.     Chekkit has infringed Plaintiff's copyright by creating and distributing derivative works of this software in violation of 17 U.S.C. § 106.

76.     Chekkit knew that the software belonged to Plaintiff and that Chekkit had no right to copy it.

77.     Chekkit willfully, and in disregard of Plaintiff's copyright, copied the software.

78.     As a direct and proximate result of copyright infringement by Chekkit, Plaintiff has suffered and continues to suffer damages and injury that may not be fully compensated or measured in money.

79.     Consequently, Plaintiff is entitled to an injunction, actual damages in an amount to be proven at trial, profits attributable to the infringement not taken into account in computing actual damages, and an award of attorneys' fees under 17 U.S.C. § 504.

**<u>SIXTH CAUSE OF ACTION</u>**
**Trademark Infringement under the Lanham Act (15 U.S.C. § 1114) – As to Chekkit**

80.     Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 79.

81.     Plaintiff has a valid and legally protected ownership interest in the PODIUM Marks as evidenced at least by its United States Trademark Registration Nos. 4861876, 4861875, 4861874, 4751012, 4751011, 4751010, 5196037, and 5196036.  Plaintiff began using these marks in commerce between 2013 and 2015, well before Chekkit was founded.

82.     Chekkit has used the PODIUM Marks in advertisements, offers for sale, and sales of its products and services, and continues to do the same.  Such use causes and is likely to cause confusion to consumers and is a direct infringement of Podium's federally registered trademarks in violation of 15 U.S.C. § 1114.

83.     Plaintiff has not authorized, consented to, or licensed Chekkit to use the PODIUM Marks in advertisements for, offers for sale, or sales of Chekkit's products and services.

84.     Upon information and belief, Chekkit intended to deceive consumers and used the PODIUM Marks to cause confusion and benefit from the goodwill associated with the PODIUM Marks.

85.    On information and belief, Chekkit had actual knowledge that its infringing acts constituted trademark infringement and/or has been willfully blind to the same.

86.    On information and belief, Chekkit has profited by virtue of its use and infringement of the PODIUM Marks.

87.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Chekkit's infringement of the PODIUM Marks through the sales of its products through advertisements using the PODIUM Marks.  Chekkit's conduct has also irreparably damaged and will continue to irreparably damage Podium's market reputation and goodwill.

88.    Plaintiff is entitled to damages to be proven at trial as well as injunctive relief against the continued infringement of the PODIUM Marks.

89.    Because Chekkit's trademark infringement was knowing, willful, and deliberate, this case is an exceptional case pursuant to 15 U.S.C. § 1117.  As such, Plaintiff is entitled to its costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
**Common Law Trademark Infringement – As to Chekkit**

90.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 89.

91.    Plaintiff has a valid and legally protected ownership interest in the PODIUM Marks.

92.    Defendant Chekkit has used, in advertisements, offers for sale, and sales of its products and services, the PODIUM Marks and continues to do the same.  Such use causes and is likely to cause confusion to consumers and is an infringement of the PODIUM Marks.

93.    Plaintiff has not authorized, consented to, or licensed Chekkit to use the PODIUM Marks in advertisements for, offers for sale, or sales of Chekkit's products and services.

94.    Upon information and belief, Chekkit intended to deceive consumers and used the PODIUM Marks to cause confusion in the marketplace.

95.    Chekkit's acts constitute willful infringement of Plaintiff's common law rights to the PODIUM Marks under the laws of the state of Utah.

96.    On information and belief, Chekkit has profited by virtue of its use and infringement of the PODIUM Marks.

97.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Chekkit's willful infringement of the PODIUM Marks through the sales of its products through advertisements using the PODIUM Marks.  Chekkit's conduct has also irreparably damaged and will continue to irreparably damage Podium's market reputation and goodwill.

98.    Consequently, Podium is entitled to injunctive relief as well as damages in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION
**Intentional Interference with Podium's Existing and Prospective Economic Relations – As to all Defendants**

99.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 98.

100.    Plaintiff has existing and prospective economic relations with its current and prospective customers because of its goodwill and ongoing marketing.

101.    Defendants knew of the existence of Podium's existing and prospective economic relations and intended to interfere with and disrupt those relations without justification and by an improper means.

102.    Defendants intentionally interfered with the performance of Podium's customers under their contracts with Podium by either disrupting performance or making performance more expensive or difficult.

103.    Defendants' intentional interference with Podium's existing and prospective economic relations was undertaken using improper means including, without limitation, violating the CFAA.

104.    Defendants' intentional interference directly caused Podium customers to cancel or refuse renewal of their contracts with Podium.

105.    As a result, Podium has suffered damages in an amount to be determined at trial.

106.    Defendants' actions toward Podium and its customers were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Podium.  An award of punitive damages under Utah Code § 78B-8-201 is therefore justified.

## NINTH CAUSE OF ACTION
### Civil Conspiracy – As to all Defendants

107.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 106.

108.    Defendants entered into a combination, and a meeting of the minds occurred, to accomplish the goal of unlawfully taking Podium's customers and gaining unauthorized access to Podium's Services as described above.

109.     By virtue of the collusive conduct among Defendants described above, there was and is a civil conspiracy to wrongfully deprive Podium of its customers and money and to gain unauthorized access to Podium's Services.

110.     By virtue of the conduct described above, one or more of the Defendants committed an unlawful overt act in furtherance of the conspiracy.

111.     The conspiracy was the proximate cause of damages to Podium, namely the loss of customer accounts in an amount to be proven at trial.

112.     Podium is entitled to damages, including punitive damages, injunctive relief, and attorney's fees and costs in an amount to be proven at trial.

<b><u>TENTH CAUSE OF ACTION</u></b>
<b>Aiding and Abetting Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) –<br>As to Tagle, Hiebert, Fayle, Klimpke, and Franz-Lien</b>

113.     Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 112.

114.     Hiebert, Fayle, Klimpke, and Franz-Lien aided and abetted Tagle's efforts to gain unauthorized access to Podium's Services as described above.

115.     On information and belief, Hiebert, Fayle, Klimpke, and Franz-Lien knew of Tagle's actions, and they knew that Tagle's actions were wrongful.

116.     They also provided substantial assistance to Tagle by helping him commit the wrongs and encouraging him to commit the wrongs.

117.     As a direct and proximate result of the actions described above, Podium has suffered significant harm—an exact amount to be determined at trial.

118.    It has become necessary for Podium to engage the services of an attorney in these proceedings as a direct and proximate result of the conduct alleged herein, and therefore, Podium is entitled to recover its attorneys' fees and costs incurred herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants as follows:

A.    A determination that Defendant Chekkit's actions violated the CFAA, 18 U.S.C. § 1030;

B.    A determination that Defendant Chekkit breached the TOS and AUP;

C.    A determination that Defendant Chekkit has violated 15 U.S.C. § 1125(a), Chekkit's violation was willful, Plaintiff has been damaged by such violation, and Chekkit is liable to Plaintiff for such violation;

D.    A determination that Defendant Chekkit has violated the Utah Unfair Competition Act, Plaintiff has been damaged by such violation, and Chekkit is liable to Plaintiff for such violation;

E.    A determination that Defendant Chekkit has engaged in willful copyright infringement under 17 U.S.C. § 504(c);

F.    A determination that Defendant Chekkit has infringed Plaintiff's PODIUM Marks in violation of 15 U.S.C. § 1114, Chekkit's infringement was willful, Plaintiff has been damaged by infringement, and Chekkit is liable to Plaintiff for such infringement;

G.    A determination that Defendant Chekkit has infringed Plaintiff's PODIUM Marks under common law, Chekkit's infringement was willful, Plaintiff has been damaged by such violation, and Chekkit is liable to Plaintiff for such infringement;

H.    A determination that the Defendants intentionally interfered with Podium's existing and prospective economic relations;

I.    A determination that the Defendants participated in a civil conspiracy;

J.    A determination that Defendants Hiebert, Fayle, Klimpke, and Franz-Lien aided and abetted Tagle's violation of the CFAA;

K.    An award against Defendants for monetary damages and/or Chekkit's profits in an amount to be proven at trial, including but not limited to, statutory damages and/or all amounts necessary to compensate Plaintiff for Defendants' violations of the CFAA, breach of the TOS and AUP, unfair competition, copyright infringement, wrongful use of the PODIUM Marks, intentional interference with Podium's existing and prospective economic relations, civil conspiracy, and aiding and abetting violations of the CFAA;

L.    An award trebling damages and/or trebling Chekkit's wrongfully obtained profits pursuant to 15 U.S.C. § 1117 based on Chekkit's willful and deliberate infringement of the PODIUM Marks;

M.    An award of punitive damages under Utah law as appropriate to punish Defendants and deter such conduct in the future;

N.    An award of Plaintiff's costs in this action, together with reasonable attorneys' fees and disbursements, and pre- and post-judgment interest;

O.    Entry of an order directing Defendant Chekkit to provide to Plaintiff for destruction any and all infringing products and/or materials related thereto, and to compensate Plaintiff for any and all advertising or other expenses necessary to dispel the public confusion caused by Chekkit's unlawful acts;

P.      Under all claims for relief, a preliminary and permanent injunction that enjoins Defendant Chekkit, its subsidiaries, parent and affiliated companies, successors, assigns, officers, directors, employees, agents, partners, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

1.      accessing Podium's Services without Podium's consent and authorization;

2.      breaching the TOS and AUP;

3.      using, disclosing, disseminating, selling, posting, displaying, sharing, distributing, hosting, copying, downloading, viewing, accessing, providing access to, or making available to anyone, in any manner whatsoever, property or information obtained from Podium's Services, including Podium's copyrighted software and proprietary information;

4.      copying or creating derivative works of Plaintiff's copyrighted software;

5.      advertising, marketing, promoting, offering for sale, distributing, selling, or using the PODIUM Marks in connection with any of Chekkit's products or services;

6.      using any trademark, name, logo, design, or source designation of any kind on or in connection with Chekkit's products or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Plaintiff's trademarks, trade dresses, names, or logos;

7.      using any trademark, name, logo, design, or source designation of any kind on or in connection with Chekkit's products or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such products or services are produced or provided by Plaintiff, or are sponsored or authorized by Plaintiff, or are in any way connected or related to Plaintiff;

8. otherwise engaging in acts of unfair competition with Plaintiff; and

9. otherwise interfering with Plaintiff's existing and prospective economic relations;

Q. Defendant Chekkit be ordered to:

1. file with the Court and serve upon the Plaintiff, within thirty (30) days after the service of the injunction upon Chekkit, a report in writing under oath setting forth in detail the manner and form in which the Chekkit has complied with the injunction and judgment entered pursuant to this Amended Complaint;

2. disable all websites in its control publicly displaying Plaintiff's copyrighted software and proprietary information;

3. delete all Internet posts in its control that contain or reference Plaintiff's copyrighted software or proprietary information;

4. deliver all unlicensed and unauthorized copies of Podium's copyrighted software;

5. deliver for destruction all products, labels, tags, signs, prints, packages, advertisements, website content, and other electronic forms of data in its possession or under its control, bearing or using the PODIUM Marks or any other simulation, reproduction, or colorable imitation of Plaintiff's mark pursuant to 15 U.S.C. § 1118;

6. file with the Court and provide to Plaintiff an accounting of all sales and profits realized by Chekkit for its products and services; and

7. permit Plaintiff, and/or auditors employed or contracted by Plaintiff, to audit and inspect the books, records, and premises of Chekkit and related entities for a period of

six (6) months after entry of final relief in this matter, to determine the scope of Chekkit's past use of Plaintiff's intellectual property;

R.    Any such other, further, and additional relief that may be considered just and equitable based on the facts and allegations contained herein.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Podium hereby demands a jury trial of all issues so triable.

DATED this 1st day of March, 2021.

/s/ J. Derek Kearl
J. Derek Kearl
HOLLAND & HART LLP

Dylan Liddiard
Anthony Weibell
Ava Miller
WILSON SONSINI GOODRICH & ROSATI, P.C.

*Attorneys for Plaintiff Podium Corporation Inc.*

16278591_v2