FILED
2021 MAY 10 PM 2:26
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PODIUM CORPORATION INC., <br><br> Plaintiff, <br><br> v. <br><br> CHEKKIT GEOLOCATION SERVICES, INC.; EUGENE TAGLE; MYLES HIEBERT; DANIEL FAYLE; LEE KLIMPKE; and EMILY FRANZ-LIEN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PROTECTIVE ORDER (DOC. NO. 70), GRANTING DEFENDANT'S MOTION TO SEAL (DOC. NO. 69), AND GRANTING DEFENDANT'S SHORT FORM DISCOVERY MOTION (DOC. NO. 77)** <br><br> Case No. 2:20-cv-00352-JNP-DAO <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Daphne A. Oberg |

Before the court are Defendant Chekkit Geolocation Services, Inc.'s ("Chekkit") Motion for Protective Order ("Mot. for Protective Order," Doc. No. 70), Motion for Leave to File Under Seal Exhibits 1–33 to Defendant's Motion for Productive Order ("Mot. to Seal," Doc. No. 69), and Rule 37-1 Short Form Discovery Motion re: Request for Production No. 23 ("Disc. Mot.," Doc. No. 77). The court held a hearing on these motions on May 5, 2021. For the reasons stated at the hearing and set forth below, the court GRANTS in part and DENIES in part the motion for a protective order (Doc. No. 70), GRANTS the motion to seal (Doc. No. 69), and GRANTS the discovery motion (Doc. No. 77).

1

### A. Motion for Protective Order (Doc. No. 70)

Plaintiff Podium Corporation Inc. ("Podium") and Chekkit are competing companies which sell software products, platforms, and services to businesses to help manage customer interactions. (*See* Am. Compl. ¶¶ 6, 8, 18, 27, 29, Doc. No. 83.) Podium brought this action against Chekkit for copyright and trademark infringement, unfair competition, intentional interference with economic relations, and related claims.[1] (*Id.* ¶ 1.) Podium alleges Chekkit employees used a false identity and posed as a fake customer of Podium in order to fraudulently gain access to Podium's products and services, steal Podium's intellectual property, and solicit away Podium's customers. (*Id.* ¶ 2.)

In its motion for a protective order, Chekkit seeks to maintain its "Attorneys' Eyes Only" ("AEO") designation of documents containing internal communications between Chekkit employees through the messaging application, Slack. (Mot. for Protective Order 1–2, Doc. No. 70.) The documents at issue total 156 pages and were filed under seal as Exhibits 1 through 33 to the motion. (Sealed Exs. 1–33 to Mot. for Protective Order, Doc. Nos. 71-1–71-33.) Podium opposes the AEO designation. (Pl.'s Short Form Opp'n to Def.'s Mot. for Protective Order ("Opp'n to Mot. for Protective Order") 1, Doc. No. 72.)

Chekkit has the burden of demonstrating good cause to designate the documents at issue as AEO. *See* Fed. R. Civ. P. 26(c)(1); *see also Martinez v. City of Ogden*, No. 1:08-cv-00087, 2009 U.S. Dist. LEXIS 12270, at *5 (D. Utah Feb. 17, 2009) (unpublished) ("The party seeking a protective order has the burden to demonstrate good cause." (citation omitted)). "Attorney's-

---

[1] Podium recently filed an amended complaint adding four new defendants. (Am. Compl., Doc. No. 83.) Those defendants have not yet appeared in the case.

eyes-only protection is usually employed to protect against business harm that would result from disclosure of sensitive documents to a competitor." *Martinez*, 2009 U.S. Dist. LEXIS 12270, at *7. "Where trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). The party resisting disclosure "must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *Centurion Indus. v. Steurer*, 665 F.2d 323, 325 (10th Cir. 1981) (footnote omitted).

Chekkit asserts the Slack messages are properly designated as AEO because they "contain sensitive and competitive business information, including but not limited to identifying information for Chekkit's potential and actual customers or partners, information regarding product pricing, and conversations regarding product development and strategic planning." (Mot. for Protective Order 5, Doc. No. 70.) Chekkit argues removing the AEO designations on the Slack messages would cause business harm because this would give Podium, a direct competitor, an inside view of Chekkit's business strategies, product discussions, pricing, and customer identities. (*Id.* at 5–6.) Chekkit further argues it would be impractical to designate only portions of documents as AEO because protectable information is peppered throughout. (Def.'s Reply in Support of Mot. for Protective Order ("Reply") 3, Doc. No. 81.)

Podium argues the blanket AEO designation of these documents is improper because most pages "contain no references to specific customers, pricing, trade secrets, or other protectable information." (Opp'n to Mot. for Protective Order 2, Doc. No. 72.) Podium also

argues the documents include admissions of wrongdoing by Chekkit employees which relate to Podium's claims in this action. (*Id.*) Podium contends these messages do not warrant AEO protection, and the AEO designation hinders the ability of Podium's counsel to confer with Podium regarding critical facts in this case. (*Id.*)

      Chekkit has failed to demonstrate good cause to designate the entirety of the documents at issue as AEO. The documents contain extensive references to Podium, including references directly related to Podium's allegations that Chekkit employees posed as a fake Podium customer, copied features of Podium's products and services, and targeted Podium's customers. These discussions are relevant to Podium's claims, and a protective order denying Podium access to this information would likely impair Podium's prosecution of the case. Moreover, the majority of these discussions do not contain specific references to customer identities, pricing, or other technical or financial information which could qualify as trade secrets. Chekkit has not articulated how disclosure of these discussions would result in business harm, rather than simply potential harm to their position in this litigation. Thus, for discussions concerning Podium which do not reveal customer identities or pricing, the risk of business harm to Chekkit from disclosing the information is outweighed by the risk that a protective order would impair Podium's prosecution of the case.

      Nevertheless, AEO protection is warranted for some portions of the documents at issue. First, good cause exists to designate customer identities and pricing information as AEO. This is the type of confidential business information which is typically granted AEO protection, and the risk of disclosure outweighs the risk of impairing Podium's prosecution of the case. Where such

information is found within a discussion referencing Podium, the AEO designation may be maintained only for this specific information, and not for the surrounding discussion.

Second, good cause exists to designate as AEO the portions of the documents which do not contain any reference to Podium or are unrelated to the allegations in this case. Podium's prosecution of the case will not be impaired by denying it access to messages which are wholly unrelated to its allegations. For these portions, Chekkit's interest in protecting its internal communications from disclosure to a competitor outweighs any risk of impairment to Podium's prosecution of the case. Thus, the AEO designation may be maintained for the portions of the documents which do not reference Podium or are unrelated to the allegations in this case.

For these reasons, Chekkit's motion for protective order (Doc. No. 70) is GRANTED in part and DENIED in part. By June 4, 2021, Chekkit shall review and redesignate the documents at issue in accordance with this order. Chekkit shall remove the AEO designation from the portions of the documents which reference Podium or are related to the allegations in this case, but it may maintain the AEO designation for specific references to customer identities and pricing and for portions of the documents which do not reference Podium. The redesignated portions may be designated as "confidential" where appropriate. Thereafter, if disputes remain regarding the scope of the AEO designations which the parties are unable to resolve after meaningfully meeting and conferring, either party may file a new motion with the court to address the specific areas of dispute.

### B. Motion to Seal (Doc. No. 69)

Chekkit seeks leave to file Exhibits 1 through 33 to the motion for protective order under seal on the basis that those documents contain internal Chekkit communications regarding

Chekkit's actual or potential customers or partners, confidential pricing information, internal business strategies, non-public comparisons of competitors' products, and/or product planning. (Mot. to Seal 1, Doc. No. 69.) Podium did not file an opposition to the motion to seal, and Podium confirmed at the hearing it does not oppose maintaining these documents under seal. Although the court has ordered Chekkit to remove the AEO designation from portions of the documents, this order permits Chekkit to redesignate the documents as "confidential." For the reasons stated in Chekkit's motion, good cause exists to maintain the exhibits under seal. Accordingly, the motion to seal is GRANTED and Exhibits 1 through 33 (Doc. Nos. 71-1–71-33) shall remain sealed.

The opposition and reply briefs to the motion for protective order were filed with redactions to the portions describing or quoting from Exhibits 1 through 33, (Doc. Nos. 72 & 81), and the unredacted versions of the briefs were filed under seal, (Doc. Nos. 74 and 82). Motions to seal those portions of the briefs are pending. (Doc. Nos. 73, 76, & 80.) The parties are ORDERED to meet and confer regarding whether the unredacted versions of the opposition and reply briefs may be unsealed in their entirety, or whether more limited redactions are appropriate. By June 4, 2021, the parties shall file joint or separate statements regarding their positions on this issue.

### C. Discovery Motion (Doc. No. 77)

In its discovery motion, Chekkit seeks an order compelling Podium to produce documents responsive to a narrowed version of Request for Production ("RFP") 23. (Disc. Mot. 1–2, Doc. No. 77.) RFP 23 asks Podium to produce "[d]ocuments sufficient to show all customers that have left Podium since January 1, 2016." (Ex. 1 to Disc. Mot., Def.'s Second Set

of Disc. Reqs. to Pl. 7, Doc. No. 77-1.)  Podium objected based on relevance and declined to produce responsive documents.  (Ex. 2 to Disc. Mot., Pl.'s Objs. & Resps. to Def.'s Second Set of Disc. Reqs. to Pl. 8, Doc. No. 77-2.)  During the parties' conferrals, Chekkit agreed to narrow the request to "documents sufficient to show the number and percentage of its customers that left Podium on a monthly basis from January 1, 2016 to the present."  (Ex. 3 to Mot., Email from Jose Abarca to Derek Kearl, et al. (March 15, 2021), Doc. No. 77-3.)  Podium declined.  (Ex. 4 to Mot., Email from John Perez to Jose Abarca, et al. (March 31, 2021), Doc. No. 77-4.)

Rule 26 of the Federal Rules of Civil Procedure permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Podium has asserted claims against Chekkit for copyright and trademark infringement, unfair competition, intentional interference with economic relations, and related claims, alleging Chekkit unlawfully copied and used Podium's intellectual property in order to sell competing products and services and solicit away Podium's customers.  (*See* Am. Compl. ¶¶ 2, 63–106, Doc. No. 83.)

Chekkit argues Podium's customer turnover rate is relevant to the causation element of Podium's unfair competition claim.  (Disc. Mot. 2, Doc. No. 77.)  Chekkit intends to refute this element by showing Podium's customers left because they were not satisfied with Podium's service, products, and pricing—not because of the alleged unfair competition by Chekkit.  (*Id.*)  Chekkit argues the turnover rate before and after the alleged unfair competition occurred is relevant to whether Podium's customers left as a result of Chekkit's conduct.  (*Id.*)

Podium asserts documents regarding customers with no link to Chekkit are not relevant to the unfair competition claim because they "say nothing of how theft of Podium's information

may have contributed to customer decisions to leave Podium," and "will not absolve Chekkit from liability." (Opp'n to Disc. Mot. 2, Doc. No. 79.) Podium argues RFP 23 is based on speculation and conjecture and would only confuse the issues because Chekkit "would have to make various unfounded assumptions regarding the actual reasons for each customer's departure." (*Id.*) According to Podium, the only relevant documents would be communications with customers who migrated from Podium to Chekkit, which Podium represents it has already agreed to produce. (*Id.* at 3.) Finally, Podium argues the request for documents going back to 2016 is not proportional because Podium's claims pertain to Chekkit's activities starting in 2018. (*Id.*)

      Viewed in light of Podium's claims and Chekkit's defenses, the requested documents showing the number and percentage of customers who left Podium on a monthly basis from 2016 to the present are relevant. Podium alleges it lost customers due to Chekkit's unfair competition, theft of intellectual property, and intentional interference, and that it suffered damages as a result. (*See* Am. Compl. ¶¶ 2, 30–32, 104–105.) Podium's turnover rate before and after these alleged activities occurred is relevant to causation and damages because, if the turnover rate did not change, this could support Chekkit's argument that customers left Podium for other reasons. RFP 23 is not based on speculation or conjecture, but is directly relevant to Podium's claims that it has lost customers as a result of Chekkit's activities. The fact that additional information may be needed to determine the precise reasons for each customers' departure does not render the overall turnover rate irrelevant. The inquiry at this stage is not whether the requested documents would be admissible or persuasive at trial, but merely whether they fall within the broad scope of

discovery permitted under Rule 26. Chekkit's request for customer turnover data meets this standard.

The timeframe of the request—from 2016 to the present—is also relevant and proportional to the needs of the case. The turnover rate both before and after Chekkit's alleged unlawful conduct is relevant for the reasons set forth above. Chekkit's request for information going back two years before these allegations is reasonable in order to provide a useful comparison, and it is not unduly burdensome in light of its direct relevance to the issues in this case.

For these reasons, the court GRANTS Chekkit's discovery motion (Doc. No. 77) and ORDERS Podium to produce documents showing the number and percentage of its customers who left Podium on a monthly basis from January 1, 2016 to the present, by June 4, 2021.

### D. Conclusion

The court GRANTS in part and DENIES in part the motion for protective order (Doc. No. 70), GRANTS the motion to seal (Doc. No. 69), GRANTS the discovery motion (Doc. No. 77), and ORDERS as follows:

1. By June 4, 2021, Chekkit shall review and redesignate the documents filed as Exhibits 1 through 33 in accordance with this order. Chekkit shall remove the AEO designation from the portions of the documents referencing Podium or relating to the allegations in this case, but it may maintain the AEO designation for specific references to customer identities and pricing and for portions of the documents which do not reference Podium. The redesignated portions may be designated as "confidential" where appropriate. If disputes remain regarding the scope of the AEO designations, which the parties are unable to resolve after meaningfully

meeting and conferring, either party may file a new motion with the court to address the specific areas of dispute.

2. The parties shall meet and confer regarding whether the unredacted versions of the opposition and reply briefs to the motion for protective order may be unsealed in their entirety, or whether more limited redactions are appropriate. By June 4, 2021, the parties shall file joint or separate statements regarding their positions on this issue.

3. By June 4, 2021, Podium shall produce documents responsive to RFP 23 showing the number and percentage of its customers who left Podium on a monthly basis from January 1, 2016 to the present.

DATED this 10th day of May, 2021.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge